**FILED**
**JULY 16, 2026**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No. 41134-6-III |
| | ) | |
| JENNIFER GOOCH, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| KEVIN GOOCH, | ) | |
| | ) | |
| Appellant. | ) | |

MURPHY, J. — Kevin Gooch appeals from a final divorce order entered after the parties reached a CR 2A settlement agreement that included the division of real property. The parties agreed Jennifer Gooch, now known as Jennifer Ribail, would receive the family home subject to her paying Kevin[1] $80,000 as an equalization payment. A dispute arose in the trial court over how to carry out this part of the agreement.

---

[1] We hereafter refer to the parties by their first names. No disrespect is intended.

After hearing from the parties, a superior court commissioner entered a final divorce order that awarded the home to Jennifer with a corresponding judgment in her favor, ordered Kevin to execute a quitclaim deed within 30 days of entry of the order, and afforded Jennifer one year to make the $80,000 equalization payment to Kevin, while retaining jurisdiction to enforce the payment obligation. The commissioner declined to enter a reciprocal judgment or other form of security for Kevin's interest in the $80,000 equalization payment.

We hold the superior court abused its discretion in implementing this portion of the parties' CR 2A agreement. While the court had authority to enter judgment and fashion appropriate enforcement mechanisms under RCW 26.09.080 and CR 2A, the final divorce order fails to give effect to the bargained-for exchange and leaves Kevin's interest in the $80,000 equalization payment unsecured. By granting a secured title of the home to Jennifer, via judgment and quitclaim, while leaving Kevin with only an unsecured future payment obligation, the order failed to facilitate or protect his receipt of the equalization payment. This created a manifestly unreasonable disparity in the parties' economic positions and practical ability to realize the benefit of their bargained for resolution.

We reverse the provision of the final divorce order in relation to the $80,000 payment to Kevin and remand for entry of a modified order that equitably facilitates and secures both parties' interests under the CR 2A agreement.

## FACTS

Kevin and Jennifer married in 2002 and separated in 2015. As the dissolution proceedings approached trial, the parties participated in a settlement conference and reached an agreement on the division of property. They agreed Jennifer would receive sole ownership of the marital home subject to the existing mortgage, and Kevin would receive an $80,000 equalization payment for giving up his interest in the home. Jennifer was to have one year to remove Kevin's name from the financing associated with the home and to pay him the $80,000, whether that payment be made from refinancing, a sale of the home, or other means.

At the presentation hearing to enter final orders, Kevin and Jennifer presented the court with dueling final orders. Kevin's counsel argued Jennifer's proposed order granted Jennifer a property judgment and required Kevin to provide a quitclaim deed within 30 days, but failed to reciprocate the judgment or otherwise secure Kevin's interest in the $80,000 equalization payment. Kevin took the position that Jennifer's proposed order created a risk that she could sell or refinance the home without paying Kevin from the proceeds. In comparison, Kevin's proposed order included an $80,000 money judgment to Kevin that also required Kevin to sign the quitclaim deed within 30 days but instructed the parties not to record that deed until needed by a title company or lender for refinance or sale.

Jennifer's counsel disputed that the parties agreed to an $80,000 judgment for Kevin stating the $80,000 was a property equalization payment but the parties never agreed the payment specifically attached to the sale of the home or a refinance. Jennifer's counsel expressed a concern with tying the $80,000 payment to a refinance, especially if Jennifer had other opportunities to obtain the money, such as through a personal loan. Jennifer's counsel also argued the "judgment" identified in her proposed order was not a true judgment because the parties agreed Jennifer would receive the home. Clerk's Papers (CP) at 59. Counsel asserted that this section in the proposed order was only included because the property's legal description was needed for tax and refinance purposes. Jennifer's counsel explained she asked for Kevin to sign and provide the quitclaim deed within 30 days because if he got in a car accident or caused someone damage and his name was still attached to the home's title, then it could affect Jennifer's ability to refinance the home.

Before proceeding further, because the parties did not agree on how to execute this part of the property division, the commissioner asked the parties how they wanted to proceed:

> Let me clarify something before we go any further. I know that you're here to enter final orders, so are you asking me to make a decision, or are the two of you—because this is obviously an agreed resolution. Because I'm happy to make a decision so that you folks can be done today, but is that not your intention? I just want to make that inquiry.

CP at 60. Both parties agreed they were asking the court to "make a decision" with

Jennifer's counsel stating: "The terms are, they're agreed, it's just logistics." CP at 60.

Noting that with either proposed final order there was "room for problems down the

road," the commissioner signed the order proposed by Jennifer after adding, in the

section requiring that Jennifer remove Kevin's name from financing for the home and

make the equalization payment within one year of the order, the following language:

"The court retains jurisdiction to enforce this provision, including ordering the sale of

the property if the $ 80,000 . . . is not paid [within] 365 days." CP at 61.

Kevin timely appeals from the final divorce order.

ANALYSIS

1.     *Entry of final divorce order*

As a preliminary matter, we address Jennifer's response brief on appeal. Unless a

respondent in a direct appeal has filed their own timely notice of appeal, they may only

respond to the issues raised and argued in the appellant's opening brief. RAP 10.3(b).

Jennifer did not, however, respond in her brief to any issue raised by Kevin. Instead,

Jennifer asks this court to reverse the superior court's final divorce order on grounds

unrelated to the assignments of error made by Kevin.

A respondent requests affirmative relief when they seek to reverse a trial court's

decision. *State v. Sims*, 171 Wn.2d 436, 442, 256 P.3d 285 (2011). We may grant a

respondent affirmative relief only if they file their own notice of appeal or the necessities

5

of the case demand it. *Id*. at 443 (citing RAP 2.4(a)). Jennifer did not file a notice of appeal or notice of cross review. RAP 2.4(a)'s necessity provision applies when the appealing party's claim cannot be considered separately from issues a respondent raises in response. *Sims*, 171 Wn.2d at 444. Here, Jennifer's claims about the superior court not equally distributing the marital property can be considered separately from Kevin's claim that the superior court's final divorce order did not reflect the parties' negotiated settlement agreement.

Further, a respondent is required under RAP 10.3(a)(5) to provide citation to the record in their brief for each asserted fact. RAP 10.3(b). Jennifer's unequal property division claims rest on facts unsupported by the record before us.

Finally, Jennnifer did not raise these issues in the trial court, and we have long held that "[a]rguments or theories not presented to the trial court will not be considered on appeal." *In re Marriage of Tang*, 57 Wn. App. 648, 655, 789 P.2d 118 (1990); *see also* RAP 2.4(a).

For the reasons stated above, we do not consider the assignments of error in Jennifer's response brief and the arguments made in support of those assignments of error.

## 2. *Standard of review and preservation principles*

We review a trial court's rulings on property and debt distribution for a manifest abuse of discretion. *In re Marriage of Neumiller*, 183 Wn. App. 914, 920, 335 P.3d 1019

(2014). A trial court abuses its discretion when its decision is based on untenable grounds or untenable reasons. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). "A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard." *Id*. at 47.

"The interpretation of the language of a property settlement agreement is a question of law that we review de novo." *In re Marriage of Weiser*, 14 Wn. App. 2d 884, 912, 475 P.3d 237 (2020) (citing *In re Marriage of Gimlett*, 95 Wn.2d 699, 705, 629 P.2d 450 (1981)). Similarly, because a proceeding to enforce a settlement resembles summary judgment, we review court orders regarding CR 2A settlement agreements de novo. *Condon v. Condon*, 177 Wn.2d 150, 162, 298 P.3d 86 (2013). Courts must enter orders that effectuate settlement agreements in harmony with RCW 26.09.080's mandate to make "just and equitable" distribution of marital property and debt.

### 3.      *Facilitating and securing Kevin's receipt of the $80,000*

As part of the property settlement agreement, the parties agreed Kevin would receive $80,000 as an equalization payment in exchange for giving up his ownership interest in the family home. The core dispute concerns the implementation of how to accomplish this, not the amount. Kevin's counsel argued for mutual judgments (or none)

and a quitclaim deed that would not be recorded until needed for refinancing or sale of the home, or upon payment of the $80,000 without refinancing or sale. Jennifer's order—adopted by the trial court—granted Jennifer judgment for the home, required Kevin to quitclaim within 30 days regardless of payment or refinance or sale, and left Kevin with an unsecured contractual right to $80,000 (with court jurisdiction retained if unpaid after one year).

This implementation does not facilitate or protect Kevin's interest in the agreed equalization payment. The dissolution court ordered that Jennifer receive immediate, secured, record title. Kevin conveyed his interest immediately but received no recorded judgment or lien to secure his right to the $80,000 equalization payment. A title report would reflect Jennifer's judgment, but not Kevin's interest or claim. If Jennifer were to refinance or sell before paying (or within the one-year period), Kevin would have no automatic protection. Instead, he would be required to return to court after 365 days, with no guarantee that the proceeds or the property would remain available. This renders Kevin's bargained-for benefit potentially illusory and creates patent disparity in the parties' economic circumstances and practical remedies. *In re Marriage of Kim*, 179 Wn. App. 232, 253, 317 P.3d 555 (2014).

Here, the trial court's order is manifestly unreasonable and based on untenable grounds. It exceeds the parties' agreement on material terms and fails to achieve a just and equitable result in practice. *Condon*, 177 Wn.2d at 163; RCW 26.09.080. While the

court retained jurisdiction as a backstop, that does not cure the initial failure to provide contemporaneous security to Kevin that is comparable to what Jennifer received.

A proper order facilitating the exchange would have included either no judgments for either party, with the quitclaim deferred and recorded only upon payment or as required by a lender for refinance or sale, or mutual judgments coupled with a quitclaim that is executed but held unrecorded. Such mechanisms would have preserved the parties' bargain, treated their interests even-handedly, and provided Kevin meaningful security without unduly burdening Jennifer's ability to refinance or sell the home, or retain it.

We reverse the judgment and quitclaim provision of the final dissolution order. On remand, the superior shall modify the decree to facility and secure Kevin's receipt of the $80,000 consistent with this opinion.

## ATTORNEY FEES

Kevin contends attorney fees are appropriate for two reasons: (1) Jennifer's brief was frivolous and (2) Jennifer engaged in intransigence behavior.

Under RAP 18.9(a), we can award attorney fees if a party fails to comply with the appellate rules and the opposing party was harmed by the failure. Jennifer violated RAP 2.4(a) by submitting a brief asking us for affirmative relief without filing any notice of appeal or cross review. She also violated RAP 10.3(a)(5) and RAP 10.3(b) by failing to provide any citations to the record on review. Kevin responded to her claims, which may have resulted in additional work for him. However, if Jennifer had submitted a

rule-conforming response to Kevin's opening brief, he would have replied regardless.

Under these circumstances, we decline to award fees as a sanction.

Kevin argues Jennifer was intransigent when she did not address the issues raised

in Kevin's opening brief, argued for affirmative relief although she did not file a notice of

appeal, raised issues not brought first in the trial court, and when she did not provide or

cite to the record in support of her arguments. However, attorney fees based on

intransigence are generally granted on appeal only if the appeal is merely an attempt to

continue behavior that caused a loss of credibility with the trial court or when the party

also engaged in intransigence before the trial court. *In re Marriage of Bresnahan*, 21

Wn. App. 2d 385, 413, 505 P.3d 1218 (2022). There is no evidence Jennifer engaged in

intransigent behavior before the superior court or that her behavior on appeal continues

improper behavior.

We decline to award appellate fees with each party to bear their own fees and

costs on appeal. The superior court may consider any fee requests on remand in light of

the parties' post-decree conduct and the need for additional proceedings.

## CONCLUSION

We reverse the provisions of the final divorce decree granting a judgment solely

to Jennifer and requiring an immediate quitclaim deed from Kevin without adequate

security or conditions tied to the equalization payment. We remand for entry of modified

No. 41134-6-III
*In re Marriage of Gooch*

orders that equitably facilitate and secure both parties' interests under their CR 2A

agreement and RCW 26.09.080.

A majority of the panel has determined this opinion will not be printed in

the Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Murphy, J.

WE CONCUR:

Lawrence-Berrey, J.

Cooney, J.

11